[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, whose maiden name was Reynolds, and the defendant married each other on June 24, 1977 at Waterbury, Connecticut.
The plaintiff has resided continuously in Connecticut for over a year prior to commencing the present action for dissolution of the marriage. No child has been born to the plaintiff since the marriage. The marriage has broken down irretrievably.
The plaintiff has two sons, born of an earlier marriage that ended by divorce in 1975. She receives child support regularly from the children's father. The defendant pays child support for children of his earlier marriage which ended in divorce in 1974.
The plaintiff is 46 years old and in good health. The defendant is 45 years old and in good health.
The defendant provided $13,000 for the down payment on the parties' first home in Waterbury which they sold six years later. The defendant's mother lived with them throughout the marriage. She paid the real estate taxes each year, and the plaintiff acknowledged that her mother-in-law was generous. On one occasion she gave $8,000 to the parties to pay for remodeling the kitchen. The defendant's mother worked at a garment factory until she retired about five years ago. The plaintiff also cared for the defendant's aunt who resided with the parties until she died in 1985. The plaintiff described the occasion when her mother-in-law and her husband's aunt moved into the parties' home as simply appearing at the plaintiff's door one day.
The plaintiff is employed by Connecticut National Bank as a CT Page 2469 secretary at a gross weekly salary of $445 and $272 net after mandatory deductions and $19 for a loan thrift plan. She has accumulated about half the credits needed for an associate's degree by taking one course each semester. The bank provides medical and dental coverage to the plaintiff at a weekly cost of $7.68. In another 18 months the plaintiff's pension will begin vesting. In addition, the plaintiff has $1,100 in a 401K Plan that the bank augments by 75% of the employee's contributions. Except for six months when the plaintiff was caring for the defendant's aunt, the plaintiff has worked throughout the marriage.
The parties first house at 102 Carriage Drive, Waterbury provided $66,000 proceeds when sold. The defendant contributed another $9,000 from the sale of another parcel he owned with other family members, known as 87 Karen Avenue, Waterbury. The parties then purchased their second house known as 145 Guernseytown Road, Watertown on November 9, 1982 for $125,000. The parties mortgaged it for $51,000 and paid the balance in cash, (Plaintiff's Exhibit G). The parties stipulated during trial that the current fair market value of the premises is $277,500. It is still encumbered by the first mortgage and a second mortgage equity line of about $60,000. (Plaintiff's Exhibit O).
The plaintiff controlled the family finances and she admitted to being a terrible money manager and that they lived beyond their means. Plaintiff's Exhibit P demonstrates the plaintiff's habit of supplementing earned income by repeated withdrawals from the equity of the house. Although substantial sums were spent on remodeling the house and on supplying the latest in furniture, fixtures, electronic equipment and other modern appliances and miscellaneous things for the house, the plaintiff also spent $6,000 to buy a Regal auto for her son, loaned $2,050 to her brother who can't pay it back, bought a Radio Shack computer for her son who was to pay back the cost, acquired a mink coat for herself, paid for a trip to Nassau, a cruise, a 1990 Chrysler New Yorker and for some things that she could not recall at trial.
The plaintiff moved from the family home on April 4, 1991 taking with her what she estimated to be less than 25% of the house's contents, and accomplishing the task while the defendant was at work.
After the plaintiff left, the defendant discovered that the first mortgage was three months in arrears, the second mortgage was two months in arrears, the fuel oil budget account was over $400 in arrears, the electric bill was over $400 in arrears, the telephone bill was two months in arrears and the Visa account was two months in arrears. CT Page 2470
The plaintiff testified that the marriage had broken down many years before 1991 but that she felt trapped and had no place to go with two minor children. The court finds this claim of plaintiff's to be inconsistent with the remaining evidence. The plaintiff's claims that she was prompted to move because of defendant's swearing in front of her grandson is equally unbelievable. Her claim that defendant's volatile temper contributed to the breakdown is also unproven in light of the remaining evidence.
For the last nine years the defendant has worked nights while the plaintiff worked days. When the parties married, the plaintiff brought a living room set, a bedroom set, a t.v. set and an old car into the marriage. The evidence clearly indicates that the defendant was a good provider. The defendant contributed his labor to the remodeling of the parties' homes as well as his money. The plaintiff admitted she referred to the defendant as "ginzo" while defendant testified it was more often "ignorant ginzo", hardly a term of endearment. The court has concluded that the plaintiff left when the money was about to run out and she could no longer maintain her excessively expensive lifestyle in light of the parties' age, station, occupations, amounts and sources of income, vocational skills, employability, estate and needs of each of the parties.
To the plaintiff's credit she worked through most of the marriage, cared for the defendant's aunt during the aunt's terminal illness, and maintained the household throughout the marriage.
The defendant also enjoyed the new furniture, fixtures, electronic equipment and other modern appliances without making any inquiry into how it all was being paid.
There remains substantial equity in the parties' home, due in part to the parties' efforts, in part due to the defendant's contributions including money received from Italy, and in part due to the contributions of the defendant's mother.
Having reviewed the evidence in light of the statutory criteria, the court enters the following decree:
1. A judgment is entered dissolving the parties' marriage on the ground of irretrievable breakdown. The cross complaint is dismissed as moot.
2. The defendant is awarded the plaintiff's interest in the real estate. The plaintiff is ordered to execute and deliver a quit-claim deed to carry out this order. If the deed is not delivered within 30 days, the transfer may be done pursuant to the CT Page 2471 statute. The plaintiff shall not encumber her interest in the interim. No assumption of mortgages is ordered.
3. The defendant shall execute a mortgage note and deed in favor of the plaintiff, bearing 8% simple interest, in the principal sum of $60,000 with one-third of the principal, together with accrued interest due annually on July 1, 1993, July 1, 1994 and July 1, 1995.
4. Each party shall pay the liabilities listed on each respective financial affidavit, except the defendant shall pay all the car taxes due in Naugatuck on all vehicles, to be paid in full on or before April 30, 1992.
5. The plaintiff is awarded all of the items of personal property listed under "Agreed List: Items to Plaintiff", Court Exhibit I.
6. The plaintiff is awarded the following items listed under "Disputed List", Court Exhibit I:
 "(5) small Christmas tree and Christmas decorations" which plaintiff described as "smaller tree"
"(7) roll top desk with chair"
"(8) tea cart purchased on cruise"
"(10) stereo system with 4 speakers and CD's"
"(11) Aunt's tea set with paper towel holder"
"(12) Cherry bedroom set; 2 bureaus, night stand, double bed"
The remaining items on the disputed list shall be retained by the defendant as his sole property, together with any other tangible personal property remaining in the defendant's home.
7. The parties shall retain all other assets as listed on their respective affidavits.
8. The defendant shall pay the sum of $750 to the plaintiff as an allowance to prosecute, due on or before June 1, 1992.
The attorney for the plaintiff shall prepare the judgment file.
HARRIGAN, JUDGE